**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                                 **CRIMINAL ACTION**

**VERSUS**

**DENNIS H. JOHNSON**                                        **NO. 06-0098-JJB-DLD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 21, 2011.

                                                   **MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                                      **CRIMINAL ACTION**
**VERSUS**
**DENNIS H. JOHNSON**                                              **NO. 06-0098-JJB-DLD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the motion of defendant Dennis H. Johnson to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The Government has filed an opposition. There is no need for oral argument or for an evidentiary hearing.

In May, 2006, the defendant was charged by indictment with possession of a firearm by a felon (a violation of 18 U.S.C. § 922(g)(1)), possession of crack cocaine with intent to distribute (a violation of 18 U.S.C. § 841(a)(1)), and possession of a firearm in furtherance of a drug-trafficking offense (a violation of 18 U.S.C. § 924(c)(1)(a)). After a trial by jury conducted in October, 2006, the defendant was found guilty of all charges and, after preparation of a Presentence Investigation Report ("PSR"), was sentenced on September 17, 2007, to ninety-six months in confinement on each of counts one and two, with these sentences to run concurrently, and sixty months in confinement on count three, with this sentence to run consecutively to the sentences imposed on the other two counts. In addition, the defendant was sentenced to three years of supervised release after imprisonment and ordered to pay a special assessment in the amount of $300.00.

The defendant appealed his convictions arguing that the trial court erred (1) in denying a motion to suppress evidence found in a fanny pack which the defendant had left at a neighbor's residence and (2) in denying a motion to suppress statements made by the defendant upon being confronted with the contents of the fanny pack. On August 21, 2008, the United States Court of Appeals for the Fifth Circuit affirmed the defendant's convictions.

On May 12, 2009, the defendant filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. The defendant asserts that he was provided with ineffective assistance of counsel in several respects. Specifically, the defendant contends that his

attorney (1) failed to raise an insanity defense before trial, at sentencing or on appeal, (2) failed to object to the sentences on the basis that the defendant was subjected to multiple punishments for possession of the same firearm, (3) "tricked" the defendant into waiving his constitutional right to testify, (4) failed to investigate or call witnesses as requested, and (5) failed to object to an allegedly incorrect guideline range under which the defendant was sentenced.

Factual Background

The evidence adduced at trial reflects that on April 26, 2005, the defendant and a neighbor were standing in front of the neighbor's residence on Odell Street in Baton Rouge, Louisiana, when police detectives arrived to investigate a complaint regarding drug trafficking at the defendant's residence, which was located across the street from where the defendant was standing. Upon seeing the police detectives, the defendant, who was wearing a fanny pack, told his neighbor that he needed to talk to him, and the two men entered the neighbor's residence. Once inside, the defendant asked the neighbor to temporarily keep the fanny pack. When the neighbor refused, the defendant nonetheless placed the fanny pack in the neighbor's laundry room and returned across the street to his own residence. When the defendant returned to his residence, the investigating detectives noticed that the defendant was no longer wearing the fanny pack, so they went across the street and asked for consent to search the premises. After consent was granted, the detectives, with the neighbor's assistance, located the fanny pack inside the laundry room. Upon picking up the fanny pack, one detective felt the outline of a firearm and opened the fanny pack to secure the weapon. In addition to the weapon, the detective also found cash and what appeared to be rocks of crack cocaine inside the fanny pack. When the detectives returned to the defendant's residence and showed him the contents of the fanny pack, the defendant admitted that the gun and narcotics belonged to him. In addition, the defendant later initiated a conversation with an officer at the police station, during which he attempted to negotiate a dismissal of the charges in exchange for providing information leading to the arrest of other offenders.

Legal Analysis

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final. United States v. Cervantes, 132 F.3d 1106 (5th Cir. 1998). "As a result, review of convictions under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." Id. Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. See Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal).

The defendant's contention in this case is solely that he was provided with ineffective assistance of counsel in several particulars as above-related. A habeas defendant who claims ineffective assistance of counsel must affirmatively demonstrate:

(1) That his counsel's performance was "deficient", i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2) That the deficient performance prejudiced his defense, i.e., that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must make both showings in order to obtain habeas relief based upon alleged ineffective assistance of counsel. Id.

To satisfy the deficiency prong of the Strickland standard, the defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured

by prevailing professional standards.  See, e.g., Martin v. McCotter, 796 F.2d 813 (5th Cir. 1986), cert. denied, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.  See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  Martin, supra, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment.  Bridge, supra, 838 F.2d at 773; Martin, supra, 796 F.2d at 816.

If the defendant satisfies the first prong of the Strickland test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.  Earvin v. Lynaugh, 860 F.2d 623 (5th Cir. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989).  To satisfy the prejudice prong of the Strickland test, it is not sufficient for the defendant to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2067.  Rather, the defendant must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  Martin, supra, 796 F.2d at 816.  The habeas defendant need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  Id. at 816-17.

The above showing is one that the defendant cannot meet in the instant case.

Initially, the defendant asserts that he was provided with ineffective assistance of counsel because his attorney failed to investigate the defendant's mental competency and failed to present an insanity defense.  In support of this assertion, the plaintiff represents that he "told counsel about his mental condition", and he points to testimony elicited at his detention hearing suggesting that he had in the past visited a mental health clinic in compliance with orders issued by a state

probation officer, and that an acquaintance believed that the plaintiff either took or would benefit from taking medicine for anger control issues. In addition, the defendant notes that, at sentencing, the District Judge recommended that the defendant be provided with mental health treatment while incarcerated. Finally, and as pointed out by the Government, the PSR indicates that the defendant represented to a federal probation officer that he had been seen by a mental health professional as a child, that his diagnosis was believed to be attention deficit disorder, and that he was taking the antidepressant Elavil, twice daily, for "bad nerves" and hyperactivity. The defendant does not, however, provide any medical records to support his assertions, nor does he advise the Court of the nature of his purported mental condition or diagnosis at the time of trial or at the time of the charged offenses. Further, he does not assert, in fact, that he was actually incompetent to stand trial or that he was legally insane at the time of the offense.

In a case where the defendant asserts the affirmative defense of insanity, the ultimate issue is whether, at the time of the offense, the defendant was incapable of appreciating the nature and wrongfulness of his conduct. United States v. Levine, 80 F.3d 129 (5th Cir.), cert. denied, 519 U.S. 824, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996). In addition, the Constitution prohibits the trial and conviction of a defendant who is mentally incompetent at the time of trial. See Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). There is a two-part standard for ascertaining competency to stand trial: (1) whether the defendant has the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, and (2) whether he has a rational as well as factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). As a threshold matter, a defendant in a habeas proceeding claiming that he was incompetent at the time of trial must first come forward with "meaningful evidence" of mental incompetency. See Demosthenes v. Baal, 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990); Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). He must present facts sufficient to positively, unequivocally and clearly generate a real,

substantial and legitimate doubt as to his mental competency. Dunn v. Johnson, 162 F.3d 302 (5th Cir. 1998), cert. denied, 526 U.S. 1092, 119 S.Ct. 1507, 143 L.Ed.2d 659 (1999). Brief and conclusory allegations that his attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice. Anderson v. Collins, 18 F.3d 1208 (5th Cir. 1994). In determining whether there is sufficient evidence to require an evaluation of mental competency, the Fifth Circuit has focused on three factors: existence of a history of irrational behavior, the defendant's demeanor at trial, and prior medical opinions. United States v. Williams, 819 F.2d 605 (5th Cir. 1987), cert. denied, 484 U.S. 1017, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988).

The defendant in this case has presented nothing more than a conclusory claim of ineffective assistance in this regard. Although he asserts that he advised his attorney that he had been provided with unspecified mental health treatment in the past, this bare-bones assertion is not enough to have triggered an investigation by his attorney. Clearly, many individuals charged with criminal conduct suffer from mental illness. This fact alone is insufficient to warrant a psychological or psychiatric evaluation in every case. See Bouchillon v. Colllins, 907 F.2d 589 (5th Cir. 1990)(not all people who have a mental problem are rendered by it legally incompetent). See also Theriot v. Whitley, 18 F.3d 311 (5th Cir. 1994) (denying habeas relief where the record was "glaringly devoid of any evidence placed before the court or [the defendant's] counsel as to defendant's mental capacity."); Carter v. Kelly, 2009 WL 6591446 (S.D. Miss., Sept. 11, 2009) (denying habeas relief where, although the defendant had "some mental issues", he "failed to establish that he could not distinguish right from wrong at the time of the crimes"); Boston v. United States, 2008 WL 2704314 (W.D. Tex., July 8, 2009) (denying habeas relief where, although there was evidence of "a history of mental illness", including treatment for attention deficit disorder, the defendant had "not provided sufficient evidence either that he was mentally incompetent at the time of trial [that he was legally insane at the time of the offense] or that a further investigation into his mental health history would have led a reasonable attorney to a different conclusion".). In short, the defendant's claim that he

may have been incompetent at the time or trial or legally insane at the time of the offense is pure speculation and is not supported by any evidence in the record. The defendant has failed to come forward with meaningful evidence of insanity or mental incompetency. He offers no facts which positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to his insanity or mental competency. Further, nothing in the testimony of any witness at trial suggested that, at the time of arrest, the defendant was unable to appreciate the nature or wrongfulness of his actions. In other words, the defendant has failed to establish that his attorney erred in failing to pursue a mental illness defense or a mental incompetency claim at trial, and he has failed to establish that he was prejudiced as a result of such failure.

The defendant next argues that his counsel was ineffective for failing to object to the sentence on the basis that the sentence subjected him to multiple punishments for possession of only a single firearm. In this regard, the test for determining whether a single act constitutes a violation of two distinct statutory provisions is whether each offense requires proof of a fact or facts which the other does not, notwithstanding a substantial overlap in the evidence offered. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In the instant case, in order to obtain a conviction on Count One of the indictment (felon in possession of a firearm), the prosecution needed to show only that the defendant had previously "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" and that he possessed a firearm that had been transported in interstate commerce. 18 U.S.C. § 922(g)(1). In contrast, in order to obtain a conviction on Count Three (possession of a firearm in furtherance of a drug-trafficking offense), the prosecution needed to show that the defendant used or carried a firearm in furtherance of or while engaged in a drug-trafficking offense. 18 U.S.C. § 924(c). Though the evidence for both offenses overlapped by requiring proof of a firearm, each offense required proof of a different fact or facts. In Count One, the defendant must have previously been convicted of a felony, and in Count Three, the defendant must have carried a firearm in furtherance of a drug

trafficking offense. Because each offense required proof of a different fact or facts, counsel was not ineffective for failing to raise a meritless double jeopardy argument. See United States v. Barber, 303 Fed.Appx. 652 (10th Cir. 2008) (finding no violation of double jeopardy where defendant was convicted of being a felon in possession of a firearm and of possessing a firearm in furtherance of a drug-trafficking offense); United States v. Williams, 172 Fed.Appx. 7 (4th Cir.), cert. denied, 549 U.S. 851, 127 S.Ct. 117, 166 L.Ed.2d 88 (2006) (same); United States v. Martinez-Ulloa, 2008 WL 780735 (N.D. Fla., March 21, 2008)(same, holding that "the [two] crimes are neither cumulative nor multiplicitous, and counsel's failure to make a meritless objection does not entitle defendant to relief").

The defendant next contends that his attorney "coerced" and "tricked" him into waiving his constitutional right to testify. In support of this contention, he points to a statement made by him in open court, after trial, at a hearing held on his motion to replace his attorney, that he had "wanted to get on the stand and tell where my money come from." In addition, he points to his attorney's acknowledgment at that hearing that he and his attorney, "frequently did not see eye to eye nor agree about what would be in his best interest", and that "there were some issues that came up during trial regarding his testifying at trial or not testifying which we did not agree about." In contrast, the Government points to a statement made in Court by the defendant's attorney, at the close of the Government's case, at which time the attorney explicitly informed the Court:

> Judge, when the jury comes in the defense is going to rest. Originally, we had anticipated that Dennis Johnson would testify. I have discussed the matter with him. It's been my recommendation to him that he not testify, although I did explain to him that it's his right to do so. In my judgment and estimation, it was in his best interest not to testify. He has agreed that he would not testify, but I thought that I should put that on the record so that it was clear.

At the time that this statement was made, the defendant did not voice any objection or otherwise indicate that he disagreed with this characterization.

A criminal defendant has a constitutional right to testify on his own behalf. See Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). This right is granted to the defendant personally and not to his attorney. Id. The Fifth Circuit has recognized that a defendant may waive his right to testify, and that defendants frequently do so upon the advice of counsel. See, e.g., Jordan v. Hargett, 34 F.3d 310 (5th Cir. 1994), vacated on other grounds, 53 F.3d 94 (5th Cir. 1995). The Court has also held that, "where the defendant contends that his counsel interfered with his right to testify, the 'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'" Emery v. Johnson, 139 F.3d 191 (5th Cir. 1997), cert. denied, 525 U.S. 969, 119 S.Ct. 418, 142 L.Ed.2d 339 (1998), quoting Sayre v. Anderson, 238 F.3d 631 (5th Cir. 2001). Therefore, the defendant is required to demonstrate both that his attorney's performance was deficient and that he was prejudiced thereby.

With regard to whether the defendant's attorney rendered deficient performance by interfering with the defendant's right to testify, the courts have recognized that an attorney's decision whether to call a defendant to testify is "part of counsel's trial strategy" and is a "judgment call which should not easily be condemned with the benefit of hindsight." See United States v. Mullins, 315 F.3d 449 (5th Cir. 2002), cert. denied, 541 U.S. 1031, 124 S.Ct. 2096, 158 L.Ed.2d 713 (2004). However, at the same time, "it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice." Id. In the instant case, whereas the defendant contends that his attorney "coerced" and "tricked" him into not testifying, these are conclusory assertions, unsupported by any factual allegations, and are not borne out by the record. The defendant's attorney explicitly stated on the record at trial that he had conferred with the defendant, that he had advised the defendant of his right to testify, and that, based upon a recommendation that it would not be in the defendant's best interest to do so, the defendant had "agreed that he would not testify." This form of colloquy is encouraged by the courts. United States v. Mullins, supra ("Careful defense counsel routinely

advise the trial judge out of the jury's presence that the defendant will or will not testify, contrary to their advice."). Had this statement by the defendant's attorney in open Court been false, it is reasonable to have expected that the defendant would have given some indication of his disagreement. Although silence alone is not determinative of a defendant's decision not to testify, id., there is more than a silent record in this case; there is a clear statement by the defendant's attorney in open court which, if false, would likely have prompted some response from the defendant. In the absence of such response, it appears most likely that the defendant ultimately acquiesced in the advice of his attorney and did not take the witness stand based on that advice. Thus, the question becomes whether the advice was sound trial strategy. United States v. Mullins, supra (acknowledging that when the record is simply that the defendant knew of his right to testify and wanted to do so, but counsel was opposed, and the defendant ultimately acquiesced in his lawyer's advise, "the only inquiry is whether that advice was sound trial strategy".).

The plaintiff has offered little information regarding what his proposed testimony would have been, other than his assertion that he wanted the jury to know that the money in his possession at the time of his arrest was the result of legitimate employment instead of narcotics trafficking. In the Court's view, this testimony would likely have had little impact upon the jury in light of testimony elicited at trial that the defendant explicitly admitted to law enforcement officials that the 25 "rocks" of crack cocaine in his possession at the time of his arrest belonged to him, together with testimony from law enforcement officials at trial that possession of this quantity of crack cocaine was consistent with an intent to distribute same. And in any event, the defendant's attorney was able to elicit testimony at trial tending to support the defendant's assertion relative to the source of his money. Specifically, testimony was elicited establishing that the defendant was employed as a construction worker at the time of his arrest, that he was working 5 or 6 days per week at that time, and that he had just come from work when police detectives arrived at his house. Accordingly, any additional testimony by the defendant that he earned the referenced money through legitimate

employment would have been cumulative and would likely have had little or no tendency to alter the jury's conclusions. Moreover, any potential benefit accruing to the defendant by taking the witness stand would surely have been outweighed by the disclosure of the defendant's many prior convictions (more than 10 in number, according to the PSR). Accordingly, the defendant has failed to demonstrate that his attorney's strategic decision to recommend against the defendant testifying was unreasonable. In light of the overwhelming evidence against the defendant, summarized above, the defendant's many prior convictions, and the defendant's confession at the time of his arrest, the defendant fails to show how his testimony would have made a difference in the outcome of the proceedings. See Sayre v. Anderson, supra (5th Cir. 2001)("Considering the overwhelming evidence of [defendant's] guilt, we cannot conceive of anything [defendant] could have said that would have provided any reasonable possibility of a different outcome."); United States v. Mullins, supra ("If [defendant] took the stand his extensive criminal record and drug use would have come into evidence. The likelihood that the jury would credit the felon over the police officer whose testimony is supported by the defendant's signed statement does not meet the reasonable probability of a different outcome test. [The Court] can say only that his testimony might have persuaded, but not that there is a reasonable probability that it would have done so."); United States v. Willis, 273 F.3d 592 (5th Cir. 2002)(same). Absent a showing of actual prejudice, therefore, the defendant fails to demonstrate a valid claim of ineffective assistance of counsel on this issue.

The defendant next contends that his trial attorney failed to investigate and call witnesses who were "willing and ready to testify", particularly (1) "his boss man" and (2) "the old man who bought him some beer from him digging at his house". The defendant fails, however, to provide any indication as to what testimony these witnesses would have provided, although they presumably would have testified regarding the source of the money in the defendant's possession. However, as stated by the defendant's attorney at the hearing on replacement of counsel, the attorney talked to several of the defendant's proposed witnesses and explicitly decided not to call them because

"they would be more problematic than helpful".  As a strategic determination of trial counsel, this determination is entitled to great deference and is "virtually unchallengable" under Strickland.  Further, the trial judge himself opined, after having presided over the trial, that in his view, the defendant's attorney had taken all appropriate actions in representing the defendant.  Finally, the defendant has failed to provide any affidavits or other evidence to establish that the defendant's witnesses were in fact available to testify or to establish the substance of their testimony.

A defendant "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  Gregory v. Thaler, 601 F.3d 347 (5th Cir.), cert. denied, 131 U.S. 265, 178 S.Ct. 175, 178 L.Ed.2d 175 (2010).  quoting United States v. Green, 882 F.2d 999 (5th Cir. 1989).  To prevail on a claim based upon uncalled witnesses, a defendant must name the witness, demonstrate that the witness would have testified, set out the content of the witness' proposed testimony, and show that the testimony would have been favorable.  Id.  Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony.  See Harrison v. Quarterman, 496 F.3d 419 (5th Cir. 2007)("Ordinarily, a defendant's failure to present some evidence from the uncalled witness ... would be fatal to an ineffective assistance of counsel claim.").  See also Alexander v. McCotter, 775 F.2d 595 (5th Cir. 1985).  In the instant case, the defendant has wholly failed to show the substance of any information which may have been uncovered by further investigation or the substance of any proposed testimony from uncalled witnesses.  Accordingly, his claim of ineffective assistance of counsel in this regard must fail.

Finally, the defendant asserts that his attorney failed to object to an allegedly improper offense level under the United States Sentencing Guidelines.  A PSR was issued in July, 2007, pursuant to which the defendant's base offense level was calculated at 22, based upon a finding of the defendant being in possession with intent to distribute 3.76 grams of crack cocaine.  The

defendant maintains, however, that his base offense level should have been determined to be 12 instead of 22.[1]

The defendant's argument is without merit. He was indicted and convicted under 18 U.S.C. § 922(g)(1), which prohibits the possession of a firearm by a convicted felon, and 21 U.S.C. § 841(a)(1), which provides that it shall be unlawful for any person knowingly or intentionally to possess with intent to distribute a controlled substance, including crack cocaine. These offenses carried with them maximum terms of imprisonment of 10 and 20 years, respectively. See 18 U.S.C. § 924(a)(2) and 21 U.S.C. § 841(b)(1)(C). Pursuant to the grouping rules set forth in USSG § 3D1.2(a), these two offenses were grouped together for sentencing purposes, and the applicable offense level was determined, according to the referenced grouping rules, by looking to the most serious count comprised in the group. In calculating the defendant's guideline range, the United States Probation Office determined that the drug possession count was the most serious count and utilized the United States Sentencing Guidelines which were in effect both at the time of commission of the referenced offenses and at the time of sentencing to determine the applicable range. These Guidelines provided, at USSG 2D1.1(c)(9), that possession of "at least 3 g but less than 4 g of cocaine base", also known as crack cocaine, carried with it an offense level of 22. This offense level, combined with a criminal history category of VI (based on the defendant's criminal history points totaling 15), resulted in a guideline range of imprisonment of 84 to 105 months. The trial court, therefore, by imposing sentences of 96 months in connection with the respective counts, which was in the exact middle of the guideline range, determined a sentence that was well within

---

[1] The defendant fails to explain how he arrives at a base offense level of 12. He asserts, incomprehensibly and without elucidation, that whereas he was indicted under 21 U.S.C. § 841(a)(1), "the statute and offense fall under 21 U.S.C. § 841(c) which carried a base offense level 12," see rec.doc.no. 73-1 at p. 6, and/or that "[h]e was indicted and convicted under 21 U.S.C. § 841(b)(1)(C), so his Base Offense Level should be Level 12," see rec.doc.no. 81 at p. 3. These assertions, however, are not borne out by the record, and the Court is unable to determine a factual or legal basis for these conclusory and undeveloped assertions.

the applicable range. In addition, the Court correctly imposed a mandatory consecutive 5-year sentence in connection with Count III of the indictment, resulting in a total sentence of confinement of 156 months. The Court finds no error in this determination and therefore finds no deficiency in the conduct of the defendant's attorney in failing to object thereto.

Further, the defendant suggests that his sentences are in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), apparently because he believes that the trial court calculated his guidelines range on the basis of facts which were not found by the jury or admitted by him. These decisions, however, have no bearing on the Court's decision. In Apprendi, the Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be admitted by the defendant or submitted to a jury and proved beyond a reasonable doubt. In the instant case, however, the defendant's assessed sentence was not beyond the prescribed statutory maximum. Accordingly, Apprendi is simply not applicable to the defendant's case. Further, the United States Supreme Court in Booker held that the Sentencing Guidelines are advisory only, effectively eliminating any Sixth Amendment concerns arising when a sentencing court finds facts relevant to sentencing within the statutory punishment range. See United States v. Prodencio, 250 Fed.Appx. 43 (5th Cir. 2007), cert. denied, 522 U.S. 1273, 128 S.Ct. 1687, 170 L.Ed.2d 381 (2008), and United States v. Mares, 402 F.3d 511 (5th Cir.), cert. denied, 546 U.S. 828, 126 S.Ct. 718, 163 L.Ed.2d 615 (2005). Indeed, the Booker Court explicitly stated, "when a trial judge exercises his discretion to select a specific sentence within a defined [statutory] range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id. In the instant case, the defendant's sentence was within both the statutory maximum and the prescribed guideline range. Accordingly, the Court was within its constitutional authority in finding the facts that led to the discretionary sentences within the statutory range. Accordingly, no Booker violation occurred in this case.

Based upon the foregoing, the defendant has failed to establish the violation of his constitutional rights in connection with his convictions and sentences. Therefore, the defendant is not entitled to relief under 28 U.S.C. § 2255, and his application should be denied.

## RECOMMENDATION

It is recommended that the defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be dismissed, with prejudice.

Signed in Baton Rouge, Louisiana, on January 21, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**